UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BARBARA STRAIN,

    Petitioner,

    v.

TEWES, Warden,

    Respondent.

No. C-11-3127 EMC (pr)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## I. INTRODUCTION

Barbara Strain, a prisoner at the Federal Correctional Institute - Dublin ("FCI - Dublin"), has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging a disciplinary decision. The petition is now ready for a decision on the merits of the petition. For the reasons discussed below, the petition will be **DENIED**.

## II. BACKGROUND

Strain is serving a 650-month sentence from the United States District Court for the District of Alaska upon her conviction of two counts of bank robbery, three counts of using a firearm in relation to a crime of violence, three counts of being a felon in possession of a firearm, and one count of interference with commerce by robbery. Her projected release date is in 2044. Her habeas petition does not challenge that conviction, and instead challenges a 2009 prison disciplinary decision that resulted in a time credit forfeiture. Strain contends that her due process rights were violated in that the disciplinary decision was not supported by sufficient evidence.

A. <u>The Disciplinary Charges Against Strain</u>

On August 7, 2009, Susan Canales, a Special Investigative Supervisor's ("SIS") Technician at FCI - Dublin wrote an incident report charging Strain with various rule violations. Canales' incident report stated, in part:

> [O]n 07-09-2009 at approximately 01:50pm Inmate Strain # 13286-006 received a magazine sealed in plastic addressed to her from Akron, OH 44320. Upon inspection of the magazine it was discovered that page 115 was glued together forming a pocket containing non-hazardous contraband. The contraband was 6 pairs of earrings yellow in color, two price tags and a typed address on a small piece of paper. Also contained inside the magazine was (sic) two blank greeting cards with envelopes. An inspection of Inmate Strain's locker was completed to aid in the investigation and to ensure no other contraband existed.
>
> The following hazardous contraband was found inside her locked locker: [¶] (476) Four hundred and seventy six individual Flammable alcohol wipes were found in approximate stacks of 100 inside blank envelopes tucked between her stacked clothing and a homemade tool which consisted of a wooden stick with sand paper adhered to it. Flammable items such as the alcohol wipes especially in such a large quantity are hazardous to the safety of staff in a prison environment and sandpaper could be used to aid in an escape.
>
> The following non-hazardous contraband was found inside her locked locker: (10) Ten Piroxicam capsules found sealed inside an envelope, a yellow in color watch with the brand name "guess" inscribed on it, and 15 plastic drinking straws. Straws and "guess" watches are not authorized. The drug Piroxicam does not appear on Inmate Strain's patient medication information form and has never been prescribed to her by FCI Dublin medical staff. Having Piroxicam constitutes the prohibited act of possessing drugs not prescribed to her by medical staff.
>
> Also contained in her locker were two letters which had the following statements: Letter 1 - "Hopefully by now you are feeling a little better seeing that you did get your magazine order and other items you asked for" [and] "just wanted to get this in the mail tonight 7/4/09"; Letter 2 - "7/6/09" "Did you read the article on page 115 of the Womens Health magazine? That was a great article" - Page 115 was the exact location of the contraband hidden inside the magazine sent to Inmate Strain.
>
> A review of Inmate Strain's telephone conversations revealed that she has been using the word "Albert" to identify hiding contraband inside magazines while speaking on the phone.

///

///

///

Docket # 6-1, pp. 11-13. Canales took pictures of the various items of contraband. *See id.* at 31-44. She also obtained Strain's medication summary list, and Piroxicam was not a listed medication for the inmate. *See id.* at 30.

The incident report charged Strain with several offenses: (1) possession of a hazardous tool (Violation Code 108); (2) possession of any narcotics or drug not prescribed for the inmate by the medical staff (Violation Code 113); (3) possession or introduction of a non-hazardous tool or other non-hazardous contraband (Violation Code 331); and (4) unauthorized use of mail (Violation Code 410).[1]

B.  The Disciplinary Proceedings

A copy of the incident report was provided to Strain on August 7, 2009.

The Unit Disciplinary Committee ("UDC") reviewed the incident report and referred it to the disciplinary hearing officer on August 10, 2009, for a hearing. This was in conformance with the regulation, which provides that the UDC conducts the initial hearing on a disciplinary charge and determines whether to resolve the matter at that level or refer it to a disciplinary hearing officer ("DHO") for a full hearing. *See* 28 C.F.R. § 541.15(h) (2009 ed.).

On August 10, 2009, prison officials provided Strain with a written notice of her rights in the disciplinary proceedings and provided her notice of the hearing before the DHO. Strain requested a staff representative and indicated she did not want to call witnesses.

The disciplinary hearing was conducted by a DHO on August 19, 2009. *See* 28 C.F.R. § 541.16(c) (2009 ed.) (DHO shall "conduct hearings, make findings, and impose appropriate sanctions for incidents of inmate misconduct referred for disposition following the hearing required by § 541.15 before the UDC.") At the hearing, Strain made several arguments in her defense. She argued that the sandpaper item was for pedicures and that she had it for years. Strain admitted to receiving the pills from a "Spanish lady" and was using them for pain. *See* Docket # 6-1, p. 21. Strain denied that she made phone calls in code about introducing contraband. She denied having

---

[1] Strain also was charged with using the telephone for abuses other than criminal activity (Violation Code 297). She was not found guilty or disciplined for this charge. Although Strain was not found guilty, the DHO "considered the transcript of the telephone conversation as an indication [Strain was] aware of the items [she] received in the mail." Docket # 6-1, p. 22.

3

any knowledge of the earrings hidden in the magazine, and denied that the letters in her locker connected her to those earrings.

Based on the evidence, the DHO found that Strain committed four of the five accused prohibited offenses, *i.e.*, Strain was found guilty of possessing a hazardous tool, possessing drugs not prescribed for her, possessing or introducing a non-hazardous tool or contraband, and unauthorized use of the mail. The discipline imposed included time in segregated housing, loss of privileges, and commissary restrictions. More significantly, the discipline imposed included a disallowance of 30 days of good conduct time for the possession of a hazardous tool offense, 41 days of good conduct time for the drug possession offense, and 13 days of good conduct time for the possession or introduction of a non-hazardous tool or contraband offense.

Strain appealed the disciplinary decision. *See* Docket # 6-1, p. 49. The BOP Regional Director denied her appeal on November 10, 2009, and the National Inmate Appeals Administrator denied her further appeal on June 3, 2010. *Id.* at 53.

### III. DISCUSSION

A district court may entertain a petition for writ of habeas corpus challenging the execution of a federal sentence on the ground that the sentence is being executed "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *United States v. Giddings*, 740 F.2d 770, 772 (9th Cir. 1984).

A federal prisoner has a statutory right to good time credits. *See* 18 U.S.C. § 3624. The prisoner also has a right to due process before those credits may be taken away. *See generally Sandin v. Conner*, 515 U.S. 472, 487 (1995) (prisoner has right to due process before deprivation that will inevitably affect the duration of confinement). The process due in such a prison disciplinary proceeding includes written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex. *See Wolff v. McDonnell*, 418 U.S. 539, 564-67 (1974). The revocation of good-time credits does not comport with the minimum requirements of procedural due process in *Wolff* unless the findings of the prison disciplinary decision-maker are supported by some evidence in the record. *Superintendent v. Hill*, 472 U.S. 445,

454 (1985). There must be "some evidence" from which the conclusion of the decision-maker could be deduced. *Id.* at 455. An examination of the entire record is not required nor is an independent assessment of the credibility of witnesses or weighing of the evidence. *Id.* The relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary decision-maker. *Id.* This standard is considerably lower than that applicable in criminal trials. *Id.* at 456. The evidence also must have some indicia of reliability. *See Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987)

The only procedural protection Strain alleges she did not receive was the evidentiary one. That is, her petition urges that the evidence was not sufficient to support the determination that she was guilty of the several offenses. Each of the findings will be considered.

A.  <u>Violation Code 108[2] Finding</u>

Strain was found to be in possession of a hazardous tool. There was sufficient evidence to support this finding based on two different contraband items: the sandpaper stick and the alcohol swabs. At the disciplinary hearing, the DHO considered the written account of SIS technician Canales, who reported that hundreds of flammable alcohol wipes and a homemade tool that consisted of a wooden stick with sandpaper adhered to it were found in Strain's locker. Strain told the DHO that the sandpaper stick was to scrape calloused from her feet, but the DHO was not required to accept her explanation instead of crediting SIS technician Canales' view that the sandpaper stick could be used to aid in an escape. Docket # 6-1, p. 11. Strain also told the DHO that the 476 alcohol swabs were for sanitation purposes, which the hearing officer did not credit over the contrary interpretation of Canales, whose report stated that these flammable items "especially in such a large quantity are hazardous to the safety of staff in a prison environment." Docket # 6-1, p. 11.

---

[2] Rule violations are given "Violation Code" numbers and are described in the Code of Federal Regulations. Violation Code 108 is the designation for the "[p]ossession, manufacture or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade)." 28 C.F.R. § 541.13 - Table 3 (2009 ed.) (punctuation errors in source).

Review of this and the other disciplinary findings illustrates the very limited nature of the "some evidence" inquiry, as this Court cannot re-weigh the evidence and considers only whether there was some evidence in the record to support the prison hearing officer's conclusion. *See Superintendent v. Hill*, 472 U.S. at 457 ("The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board.") For example, the finding that sandpaper adhered to a wooden paint stick was a hazardous tool that could be used for a potential escape attempt is not a finding this Court would make if it weighed the evidence independently. But *Superintendent v. Hill* does not permit such a re-weighing of the evidence, and instead commands that the decision be upheld if "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. Here, the incident report with Canales' interpretation of the contraband items' potential uses, plus the pictures of the items, provided some evidence to support the guilty finding. Further, Strain's admission that she possessed the alcohol swabs and sandpaper stick (although with an allegedly legitimate purpose for each) also supported the finding of guilt on this charge, and satisfied the requirement that the evidence have some indicia of reliability.

B.  Violation Code 113[3] Finding

The DHO found Strain guilty of being in possession of a drug not prescribed for her by the prison medical staff. The evidence easily supported the finding of guilt on this charge. At the disciplinary hearing, the evidence included the written account of SIS technician Canales who reported that ten Piroxicam[4] capsules were found in Strain's locked locker; Strain's statement that she received the pills "from a Spanish lady" for her pain from a fall she suffered while running, Docket # 6-1, p. 21; a photo of the ten pills; and Strain's medication list that showed she had not been prescribed Piroxicam. This was sufficient evidence to support the finding that she was guilty

---

[3] Violation Code 113 is described as "[p]ossession of any narcotics, marijuana, drugs or related paraphernalia not prescribed for the individual by the medical staff." 28 C.F.R. § 541.13 - Table 3 (2009 ed.).

[4] Piroxicam is a non-steroidal anti-inflammatory pain reliever for arthritis pain available by prescription. *See* www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000826 (last visited July 23, 2012). The brand name for piroxicam is Feldene.

6

of the offense. Strain's suggestion that she had the Piroxicam for pain relief does not aid her, as the rule prohibited the drug's possession without authorization, rather than its possession for any particular purpose.

C. Violation Code 331[5] Finding

The DHO found Strain guilty of possession or introduction of a non-hazardous tool or other non-hazardous contraband. There was sufficient evidence to support this finding. The evidence included Canales' written report that described the earrings found in a homemade pocket inserted into page 115 of a magazine mailed to Strain, combined with a letter found in her locker that asked her if she read the article on page 115 of Women's Health magazine. The evidence also included photos of the magazine – although it was a "Good Housekeeping" rather than "Women's Health" magazine – showing the hidden pocket, the earrings found in the pocket, and the plastic pouch in which the magazine arrived addressed to Strain. The evidence also included transcripts of telephone conversations that reasonably could be read to mean that Strain was talking in code about receiving contraband in the mail. *See* Docket # 6-1, pp. 46-47. Strain denied knowledge of the earrings and denied knowing that the letters referred to contraband, but the DHO was not required to credit Strain's professed lack of knowledge about the contraband. Separately, the discovery of 15 straws in Strain's room could have supported the finding of guilt of introduction or possession of contraband. Although Strain contended that the items were stems from spray bottles rather than straws, the photograph of the straws, Docket # 6-1, p. 43, and description of them in Canales' written report provided sufficient evidence to support the DHO's finding that they were non-hazardous contraband.

///
///
///
///

---

[5] Violation Code 331 is described as "[p]ossession, manufacture or introduction of a non-hazardous tool or other non-hazardous contraband (Tool not likely to be used in an escape or escape attempt, or to serve as a weapon capable of doing serious bodily harm to others, or not hazardous to institutional security or personal safety; Other non-hazardous contraband includes such items as food or cosmetics)." 28 C.F.R. § 541.13 - Table 3 (2009 ed.).

7

D. <u>Violation Code 410[6] Finding</u>

The DHO found Strain guilty of unauthorized use of the mail. There was sufficient evidence to support this finding: Canales' written report described the letter in Strain's locker that specifically mentioned page 115 of a magazine and on that page in a magazine sent to Strain there was a secret pocket containing the contraband earrings. Canales' written report also described the recorded telephone conversations and mailings that reasonably could be viewed as showing a coordinated effort between Strain and the other participant in the phone call to cause contraband to be sent to Strain. *See* Docket # 6-1, p. 45 (letter); *id.* at 46-47 (memorandum transcribing telephone calls of July 4, 10, and 11, 2009, with references to "Alfred").

The evidence satisfies the "some evidence" requirement for each of the disciplinary offenses. Strain did offer evidence and argument in her defense, but the fact that an inmate offered a defense did not mean that the hearing officer had to accept it as true. The evidence to support the disciplinary decision was constitutionally sufficient and reliable. Strain's right to due process was not violated by the prison official's decision to find her guilty. She is not entitled to the writ of habeas corpus.

## IV. CONCLUSION

The petition for writ of habeas corpus is **DENIED** on the merits. The Clerk shall close the file.

IT IS SO ORDERED.

Dated: August 1, 2012

EDWARD M. CHEN
United States District Judge

---

[6] Violation Code 410 is described as "[u]nauthorized use of mail . . . (May be categorized and charged in terms of greater severity, according to the nature of the unauthorized use; e.g., the mail is used for planning, facilitating, committing an armed assault on the institution's secure perimeter, would be charged as a Code 101 Assault)." 28 C.F.R. § 541.13 - Table 3 (2009 ed.) (errors in source).

8